UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRACEY SUE BRANDLEY,

Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

NO: 2:14-CV-0042-TOR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 16, 20). Dustin D. Deissner represents Plaintiff. Summer Stinson represents Defendant. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion and grants Defendant's motion.

//

//

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 404.1520(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. *Id.* § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. *Id.* § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, *id.* § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. *Id.* § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id.* § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff applied for disability insurance benefits on May 16, 2011, alleging a disability onset date of April 19, 2007. Tr. 113-19. Her application was denied initially and upon reconsideration, Tr. 82-84, 86-87, and Plaintiff requested a hearing, Tr. 90-91. Plaintiff appeared before an administrative law judge ("ALJ") on November 21, 2012. Tr. 23-61. The ALJ issued a decision denying Plaintiff benefits on December 7, 2012. Tr. at 9-22.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through December 31, 2012. Tr. at 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 19, 2007, the alleged onset date. Tr. at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: history of proximal row carpectomy of the right wrist due to Kienbock disease and left carpal tunnel release. Tr. 14. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment through the date last insured. Tr. 14. The ALJ then determined that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) with the following non-exertional limitations[:] i.e., no crawling or climbing; only occasional pushing and pulling; and frequent but not constant handling and fingering with the right hand. She should also avoid

> concentrated exposure to vibrations and hazards (machinery, heights, etc.).

Tr. 15. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a client services supervisor for cable advertising, finding this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Tr. 17. In the alternative, considering Plaintiff's age, education, work experience, and RFC, the ALJ found other jobs that exist in significant numbers in the national economy that claimant would be able to perform. Tr. 18. Thus, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, and denied her claims on that basis. Tr. 19.

The Appeals Council denied Plaintiff's request for review on November 20, 2013, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

//

//

//

//

//

//

//

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 16. Plaintiff raises the following three issues for this Court's review:

1. Whether the ALJ erred in assessing Plaintiff's credibility;
2. Whether the ALJ erred in weighing the opinion of Plaintiff's treatment providers; and
3. Whether the ALJ erred in failing to call a vocational expert.

*Id.* at 5-10.

## DISCUSSION

### A. Adverse Credibility Finding

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). The ALJ must first determine whether the claimant has proved the existence of a physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927; *see Molina*, 674 F.3d at 1112. A claimant's statements about his or her symptoms alone will not suffice. *Id.* §§ 416.908, 416.927. "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not

discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  Rather, as long as the impairment "could reasonably be expected to produce the pain or other symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Bunnell*, 947 F.2d at 345-56.  This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (citation omitted).

However, an ALJ may conclude that the claimant's subjective assessment is unreliable, so long as the ALJ makes "a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Bunnell*, 947 F.2d at 345 ("[A]lthough an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion.").  If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must

explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see Berry*, 622 F.3d at 1234 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

In weighing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation." *Molina*, 674 F.3d at 1112 (citation omitted). The ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Chaudry*, 688 F.3d at 672 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Id.* (quoting *Tommasetti*, 533 F.3d at 1039).

Although Plaintiff contends that the ALJ improperly discredited her testimony, ECF No. 16 at 5–8, this Court disagrees. The ALJ provided the following specific, clear, and convincing reasoning supported by substantial evidence for finding Plaintiff's subjective statements not fully credible: the ALJ found inconsistencies (1) throughout the record regarding Plaintiff's admissions to

substance abuse, ability to engage in full-time work, and reason for stopping work; and (2) between Plaintiff's testimony and the objective medical evidence within the record. Tr. 16-17.[1]

First, the ALJ noted several inconsistencies throughout the record between Plaintiff's disability claim and prior admissions. Tr. 33. For instance, although Plaintiff insisted that she last abused drugs in 2007, the ALJ noted indications of drug abuse in May 2011. Tr. 16; *see Chaudry*, 688 F.3d at 672. Further, although Plaintiff testified that she was unable to return to work after surgery, she also testified to receiving unemployment benefits in 2010 which requires "one to present as an able-bodied individual looking for employment." Tr. 16. As testified to at the hearing, Plaintiff stated that she was looking for fulltime work when she was receiving unemployment benefits. Tr. 47; *Carmickle v. Comm'r of Soc. Sec.*

[1] Although the ALJ also noted Plaintiff's failure to seek treatment as another reason for discounting her testimony, *see* Tr. 16-17, this was not a permissible ground based on the record here because Plaintiff explained at the hearing why she did not seek further treatment after surgery, *see* Tr. 40. *See Tommasetti*, 533 F.3d at 1039 (permitting an ALJ to consider "unexplained or inadequately explained" failure to seek treatment when making an adverse credibility finding). If the ALJ found Plaintiff's explanation inadequate, the ALJ needed to make this express finding.

*Admin.*, 533 F.3d 1155, 1061-62 (9th Cir. 2008) ("[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime."). Finally, the ALJ noted that Plaintiff lost her previous job due to a work-force reduction and presented for unemployment benefits thereafter, suggesting she did not leave due to her disability. Tr. 17; *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that the ALJ provided a specific, cogent reason for disregarding plaintiff's pain testimony when the ALJ relied on plaintiff's testimony that he left his job because he was laid off rather than due to his injury). These general inconsistencies provided a permissible and legitimate reason for discrediting Plaintiff's testimony.

Second, the ALJ found Plaintiff's "very limited medical records/evidence" did not support the frequency and severity of symptoms claimed. Tr. 15, 17. Instead, the ALJ relied upon the medical opinions of Drs. Weir, White, and Thuline to determine that Plaintiff could work, albeit with some limitation. Tr. 15-18. Because inconsistencies between pain testimony and medical evidence provide a permissible and legitimate basis for discounting Plaintiff's credibility, the ALJ did not err. *Thomas*, 278 F.3d at 958; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Accordingly, because the ALJ provided specific, clear, and convincing reasons based on substantial evidence for finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms . . . not credible to the extent they are inconsistent" with the ALJ"s RFC finding, Tr. 17, this Court does not find error.

**B. Opinion Evidence**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted). A physician's opinion may be entitled to little, if any, weight

when it is an opinion on a matter not related to her or his area of specialization. *Id.* at 1203 n. 2 (citation omitted).

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

Here, Plaintiff contends the ALJ erred by giving greater weight to nonexamining physicians than her treating physician, Dr. Lin. ECF No. 16 at 8-10. Specifically, Plaintiff notes that Dr. Lin recorded significant pain complaints in his 2006 and 2007 examinations, *id.* at 8-9; however, Plaintiff cites to no opinion or recommendation that the ALJ ignored in making the ultimate nondisability finding.

This Court finds the ALJ properly considered the relevant medical opinion evidence. First, the ALJ reasonably relied on the opinion of Dr. Weir, who conducted a consultative disability evaluation of Plaintiff in 2011 and who opined that Plaintiff would have "very few functional limitations." Tr. 16, 215. Specifically, Dr. Weir opined that Plaintiff would have "limited ability to use the right upper extremity for activities involving repetitive pulling or pushing" but would be able to engage in these activities occasionally. Tr. 215. The ALJ incorporated Dr. Weir's opinion into the RFC. *See* Tr. 15. Second, the ALJ reasonably relied on the opinions of Dr. Thuline, a state agency doctor who reviewed Plaintiff's records and opined Plaintiff "maintained a medium level residual functional capacity with 50 pound lifting/carrying capacity occasional and 25 pounds regularly or frequently." Tr. 16, 77-81. The ALJ similarly incorporated this opinion into the RFC finding. *See* Tr. 15. Finally, the ALJ considered the opinion of Dr. Weir, a testifying medical expert, who concurred with the limitations addressed above. Tr. 16, 29-30.

The ALJ, tasked with weighing the medical evidence within the record, set out an adequate examination of the "very limited" medical evidence within the record, stated his interpretation of the evidence, and made specific findings. Tr. 15-17; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences

reasonably drawn from the record . . . and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."). Although Plaintiff would give her pain complaints, recorded by Dr. Lin, greater weight, this Court will not second-guess the ALJ's interpretation of the medical evidence and ultimate nondisability finding which are supported by substantial evidence.

**C. Vocational Expert**

Once a claimant has demonstrated a severe impairment that prevents her from engaging in any previous work, the burden then shifts to the Commissioner to demonstrate that the claimant can perform some other work—considering the claimant's RFC, age, education, and work experience—that exists in "significant numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner can satisfy this burden in one of two ways: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines. *Id.* at 1101.

In some cases, it is appropriate for the Commissioner to rely on the Medical-Vocational Guidelines, which provide a matrix system for handling claims that involve substantially uniform levels of impairment, to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy. *Id.* at 1101. The grids present a "short-hand method for

determining the availability and number of suitable jobs for a claimant," which approach "allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims." *Id.* To determine where a claimant fits within the grids, the ALJ applies a matrix of four factors: age, education, previous work experience, and physical ability. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Each combination of factors directs a finding of "disabled" or "not disabled": "If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled." *Id.* at 1115.

The nature of a claimant's limitations determines whether use of the grids is appropriate. "Where a claimant suffers only exertional limitations, the ALJ must consult the grids." *Id.* On the other hand, where a claimant suffers only non-exertional limitations, use of the grids is inappropriate. *Id.* If the claimant's limitations are mixed, an ALJ may use the grids, which provide for an assessment of both exertional and non-exertional limitations, unless "a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)). That is, "a vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in

the grid." *Id.* at 1076.

Plaintiff faults the ALJ for not calling a vocational expert at the hearing, ECF No. 16 at 10; however, she provides no explanation as to why a vocational expert was necessary here. First, the ALJ determined at step four that Plaintiff was capable of performing past relevant work as a client services supervisor for cable advertising. Tr. 17. Thus, because Plaintiff did not meet her burden at step four, *see Lockwood*, 616 F.3d at 1071, the ALJ was not required to proceed to step five to determine whether Plaintiff would be capable of performing other work that exists in significant numbers in the national economy.

Second, the ALJ's alternative step-five finding that other work existed in significant numbers in the national economy was proper without the aid of a vocational expert. Because the ALJ found that Plaintiff suffered only exertional impairments, exclusive reliance on the grids was appropriate here.[2] *Lounsburry*, 468 F.3d at 1115. At step five, the ALJ concluded that Plaintiff had the capacity to perform the full range of light work and her additional limitations had little or no

[2] Although not raised in Plaintiff's motion, this Court notes that Plaintiff's "situational depression," diagnosed in March 2007, does not change the accuracy of the ALJ's exclusive reliance on the grids. *See Hoopai*, 499 F.3d at 1076-77 (affirming the ALJ's exclusive use of the grids for a claimant whose only non-exertional limitations were mild to moderate depression and social functioning).

effect on the occupational base of unskilled light work. Tr. 18. As indicated by the regulations, light work represents "substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work." 20 C.F.R. pt. 404, Subpt.P, App. 2, Rule 202.00(b). The Medical-Vocational guidelines take "administrative notice" of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels, including light activity. *Id.* at Rule 200.00(b). Accordingly, the ALJ's nondisability finding based on the Medical-Vocational Guideline grids did not need further assistance from a vocational expert.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.
2. Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter **JUDGMENT** for **DEFENDANT**, provide copies to counsel, and **CLOSE** the file.

**DATED** April 27, 2014.

THOMAS O. RICE
United States District Judge